IN THE UNITED STATES DISTRCT COURT
FOR THE DISTRICT OF NEW MEXICO

GABRIEL J.B. MONTOYA *and*
ARES BROWN,

    Plaintiffs,

v.                                                                                                  No. 1:22-cv-00265-KG-JHR

NEW MEXICO CORRECTIONS DEPARTMENT,
ALISHA TAFOYA, TIM HATCH, JANINE
RODRIGUEZ, BENJAMIN LUJAN, ISAIAH
MONTANO, *and* JOHN DOES I–VIII,

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES**

THIS MATTER is before the Court on the motion of Plaintiffs Gabriel J.B. Montoya and Ares Brown, entitled "Motion to Compel Full and Complete Supplemental Answers to Interrogatories and Documents Requested in the First Request for Production of Documents," [Doc. 78] ("the Motion"). Briefing on the Motion is complete and oral arguments have been heard, so the matter is ripe for decision. Based on the parties' arguments and the relevant law, the Court denies the Motion.

    I.    **BACKGROUND AND PROCEDURAL HISTORY**

The procedural posture of the Motion, and this case generally, is unusual. To give context to the discussion below, the Court summarizes how this case began, its development in the original discovery phase, and how recent dispositive issues have been resolved.

This case began in April 2022 when Plaintiffs,[1] then inmates of the Reception, Diagnostic and Classification Unit ("RDC") of the Central New Mexico Correctional Facility, sued the New

---

[1] There are currently two Plaintiffs, but originally there were three. *See* [Doc. 1, pp. 12–13]. Plaintiff Haydar al-Assadi is no longer in the case because his claims were dismissed for lack of prosecution after he disappeared and

1

Mexico Corrections Department ("NMCD" or "Corrections Department"), its top officers, and several of its staff members for alleged violations of the First, Fourth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments to the United States Constitution and the federal Rehabilitation Act, 29 U.S.C. § 701 et seq. [Doc. 1, pp. 13–14, 38–50].[2]  The complaint was first amended in July 2022, narrowing the claims to focus only on violations of the Eighth Amendment and the Rehabilitation Act.  *See* [Doc. 13, pp. 39–45].  Issuance of a scheduling order, and thus discovery, was delayed several times at the parties' request and based on issues raised in motions and joint status reports.  *See* [Docs. 19, 20, 22, entry dated 01/19/2023, 40, 41].  A scheduling order was finally entered in March 2023, setting deadlines for amendment of pleadings, discovery responses and motions, and dispositive motions.  [Doc. 45].

  Matters were complicated by motions filed in April and June 2023.  In late April, Plaintiffs moved for an extension on the deadline to amend their pleadings, arguing that additional time was needed for amendment because Defendants were not cooperating in the discovery process.  [Doc. 55, pp. 1–2].  Then, in mid-June, Plaintiffs' counsel filed a motion in which she asked for leave to file a separate, sealed motion to withdraw as the attorney for Plaintiff Montoya.  [Doc. 58, pp. 1–2].  Later that month, Plaintiffs filed a second motion for an extension on the amended pleadings deadline, arguing again that Defendants were not cooperating in the discovery process and that an indefinite extension of the deadline was appropriate.  *See* [Doc. 59, pp. 1–2].

  A small flurry of filings followed from late June through mid-July.  Defendants moved for summary judgment against Montoya, arguing that he, "through judicial admission," conceded

---

lost contact with counsel.  *See* [Docs. 43, 86].  Hereafter, this Order refers only to Gabriel J.B. Montoya and Ares Brown as "Plaintiffs."

[2] In citations to case documents, available on the Case Management/Electronic Case Files ("CM/ECF") system, page numbers refer to the pagination generated by CM/ECF at the top of each page, not to internal pagination.

the existence of qualified immunity in the Motion for Leave. [Doc. 61, p. 4]. Three days later, Plaintiffs attempted to withdraw the Motion for Leave, a move which Defendants opposed. *See* [Docs. 62, 67]. Each side also filed its respective responses and replies to each other's motions, all in opposition to each other. *See* [Docs. 60, 63–65, 68, 71, 72].

In the middle of all this, Plaintiffs filed a Motion to Compel Discovery. *See* [Doc. 66]. The Court denied the Motion to Compel without prejudice because Plaintiffs did not request an informal discovery conference before filing it, as required by the Scheduling Order. [Doc. 73, p. 1]. An informal discovery conference was then held in August, at which no resolution was reached, and leave was given for Plaintiffs to refile. *See* [Doc. 77]. This produced the Motion now before the Court, [Doc. 78]. Plaintiffs also moved to amend the complaint for a second time. [Doc. 80]. Litigation was then stayed pending resolution of the Motion for Summary Judgment. [Doc. 83].

In December 2023, the Court permitted Plaintiffs to withdraw the Motion for Leave. [Doc. 85]. In January 2024, the Court granted extensions of the deadline to amend pleadings and granted the Second Motion to Amend. *See* [Doc. 87]. The operative complaint is thus the Second Amended Complaint, [Doc. 88]. Finally, after a hearing, the Court denied Defendants' Motion for Summary Judgment without prejudice, permitting Defendants to raise qualified immunity again in the future. *See* [Docs. 90, 91].

This brings the case to its current juncture. In February 2024, the stay on litigation was lifted and an oral argument hearing was set on the only remaining motion from the June-July flurry – the Motion to Compel Discovery, [Doc. 78]. *See* [Doc. 92]. Defendants filed a response in opposition to the Motion, [Doc. 94], and Plaintiffs replied, so briefing is complete. [Doc. 95].

Oral argument was heard March 1st and a written decision was promised expeditiously. *See* [Doc. 98]. The matter is thus ripe for decision.

## II. THE MOTION AND THE PARTIES' POSITIONS

During the original discovery phase of this case, Plaintiffs sent Defendants 25 interrogatories and 25 requests for production. *See* [Doc. 78, pp. 24–49]. Many of those requests asked for documents and information spanning five to ten years and every Corrections Department facility across the State of New Mexico. *See, e.g., id.* at 40 ("Request for Production No. 3: Please produce any and all depositions taken within the last five years of any employee or contractor dealing with or having to do with any force used by correction officer [*sic*], the grievance system within NMCD, or complaints regarding lack of proper medical treatment"). Defendants objected to many requests on the grounds that they were "overly broad," "unduly burdensome," "not relevant to any party's claim or defense," and were not "proportional to the needs of the case[.]" *See id.* Those objections are the targets of this Motion.

Plaintiffs primarily argue that they are entitled to a broad swath of documents and information because they are "not merely relevant to Plaintiffs claims, they are central to the case." *Id.* at 10. Plaintiffs then explain that their theory of the case goes to practices systemic to the Corrections Department, and that uncovering years' worth of information will "tell the wider story of how [NMCD's] grievance system shields the Defendants from 8th Amendment medical violation claims and excessive use of force cases and how the policy and procedure is the foundation for such violations[.]" *Id.* at 12. Plaintiffs further argue that "relevance," under the Federal Rules of Civil Procedure, has a broad sweep, capturing virtually all information related to a litigant's claims. *See id.* at 10–11. Therefore, they say, requests like the one quoted above are permitted by the Rules and necessary to litigate the case.

4

Defendants stand by their original objections. In their view, the requests to which they objected were patently overbroad and unduly burdensome and answering them would require "countless hours" of work to identify each past case or document responsive to Plaintiffs' requests. *See, e.g.,* [Doc. 94, p. 3]. To answer requests calling for litigation-related material, attorneys would need to review the documents for privileged information, taking even more time. *See, e.g., id.* at 3. These arguments are repeated for virtually every defense objection. *Id.* at 3–12.

The parties add some minor and procedural arguments. Plaintiffs assert that the Defendants once promised to produce all the materials and information sought and have now gone back on their promise. [Doc. 78, pp. 2–3]. Defendants do not answer this claim in their response brief, but stated during oral argument that no such promise was made. Defendants also argue that Plaintiffs' Motion was untimely and should thus be denied. [Doc. 94, pp. 1–2].

## III.   RELEVANT LAW

### a.   *Discoverable Information under Rule 26*

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information is "relevant" under Rule 26(b)(1) when it bears on or could reasonably lead to other matters that bear on any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Tolbert v. Gallup Indian Med.*

*Ctr.*, 555 F. Supp. 3d 1207, 1233 (D.N.M. 2021) (analyzing the *Oppenheimer Fund* definition in light of edits to the Rules).

The broad scope of "relevance" is tempered by the requirements of proportionality. Proportionality, as described in Rule 26, requires the Court to compare the parties' requests to the circumstances of the case. *See* Fed. R. Civ. P. 26(b)(1). Further, courts are not required to permit "fishing expeditions" – wide-ranging, speculative discovery inquiries intended to catch as much information as possible in the hope that the requesting party will find information to support its claims. *See McGee v. Hayes*, 43 F. App'x 214, 217 (10th Cir. 2002) (unpublished). District courts have discretion to limit or allow discovery to balance the needs and rights of both plaintiffs and defendants. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995).

    b. *Plaintiffs' Claims for Relief*

What information falls within the scope of appropriate discovery depends in part on the claims alleged, so the Court addresses them. Plaintiffs' Second Amended Complaint is written as though it makes only two claims, but it really makes three – an Eighth Amendment excessive force claim, an Eighth Amendment claim based on prison administrative procedures, and a Rehabilitation Act claim for disability discrimination.[3]

Plaintiffs' first claim is that their Eighth Amendment rights to be free from cruel and unusual punishments were violated when correctional officers beat and thereby injured them while incarcerated. [Doc. 88, pp. 42–44]. To prevail on this claim, Plaintiffs will need to show

---

[3] Plaintiffs' counsel represented during the March 1, 2024 hearing that the Second Amended Complaint also states an Eighth Amendment claim for denial of medical care. Counsel did not, however, point to any specific language in the Second Amended Complaint to support this, and the Second Amended Complaint only discusses medical care in relation to Plaintiffs' claims based on flaws in the grievance system. The Court will proceed based on the claims clearly made in the Second Amended Complaint.

that (1) the alleged wrongdoing was so objectively harmful as to establish a constitutional violation, and (2) that the alleged wrongdoers acted with a sufficiently culpable state of mind. *Redmont v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (quoting *Giron v. Corr. Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999)).

Plaintiffs' second claim is more complicated. They assert that the prison's grievance system was so inadequate and inaccessible that being required to use it to raise complaints about physical abuse and poor medical care was, itself, a violation of Eighth Amendment rights. [Doc. 88, pp. 44–45]. Consequently, Plaintiffs were denied medical care to treat mental health conditions and physical injuries inflicted by correctional officers. *Id.* at 44–47. The Court can find no case law defining the elements of such a claim (and Plaintiffs offer none), so this Order interprets it as a "conditions of confinement" claim under the Eighth Amendment. The Plaintiffs will thus need to show that the grievance system (1) posed a substantial risk of serious harm, and (2) was imposed with deliberate indifference to inmate health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Finally, Plaintiffs' third claim is that NMCD's grievance system violated their rights under Section 504 of the Rehabilitation Act because the system was so convoluted and difficult to navigate that intellectually disabled people could not use it without additional help and, despite NMCD's official policies, no meaningful help was provided to Plaintiffs. [Doc. 88, pp. 47–50]. In other words, the grievance system impermissibly discriminates against intellectually disabled inmates. *Id.* at 47–50. A claimant under Section 504 of the Rehabilitation Act must show that (1) he is a qualified individual with a disability, (2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and

7

(3) such exclusion, denial of benefits, or discrimination was by reason of a disability. *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

## IV.   **DISCUSSION**

First, the Court acknowledges Plaintiffs' contention that Defendants promised to produce the requested information as well as Defendants' assertion that no such promise was made. The Court declines to enforce a vaguely described and undocumented oral promise to produce voluminous information, especially because it clear that Defendants now oppose such production. Second, the Court acknowledges Defendants' objection to the Motion as untimely and exercises its discretion not to resolve the Motion on that ground. Rather, the Court resolves the Motion on its merits and addresses the Plaintiffs' requests based on the law of discovery as it applies to Plaintiffs' claims.

As to Plaintiffs' requests to which Defendants have since responded, no compulsion is needed. As to the requests to which Defendants still object, the Court denies the Motion for the reasons which follow.

    a.   *Request for Production 1: No Compulsion Needed*

Plaintiffs requested "for inspection and copying any documentation or other tangible thing in any form whatsoever identified in any answer to any Interrogatory herein, including a copy of any grievance, complaint, memorandum, note or any writing whatsoever including depositions or videos." [Doc. 78, p. 39]. Defendants' responses attached to the Motion suggest Defendants complied. *See id.* at 13, 39. Counsel confirmed at the hearing that this request was, in fact, answered as to documents identified in answers to interrogatories. Because the request was answered, and because the Court does not compel any additional answers for the interrogatories below, no further production will be compelled.

b. *Requests for Production 3, 5, 9, 10, 11, 16, 18, 21, 22, 23: Compulsion Denied*

Defendants will not be compelled to produce documents in response to Requests for Production 3, 5, 9, 10, 11, 16, 18, 21, 22, or 23 because the requests are not clearly relevant, nor are they proportional to the needs of the case.  Each request shares the same problem, so the Court will directly address just a few to avoid unnecessary repetition.

Plaintiffs made the following requests for production:

Request for Production No. 3: Please produce any and all depositions taken within the last five years of any employee or contractor dealing with or having to do with any force used by correction officer, [*sic*] the grievance system within the NMCD, or complaints regarding lack of proper medical treatment.

Request for Production No. 16: Please produce for inspection and copying a list of Correction Officers disciplined within RDC and any other NMCD facility for the inappropriate use of force within the last five (5) years, and detail what the discipline was, and the circumstances which resulted in the discipline.

Request for Production No. 22: Please produce for inspection and copying all the grievances filed at RDC and the other NMCD facilities within the NMCD that survived the grievance process up to and including the appeals process within the NMCD within the last 10 years redacted to protect confidential information and information protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPPAA").

[Doc. 78, pp. 40, 45, 47].

The first problem is relevance.  The Plaintiffs are litigating three discrete claims – that corrections officers used excessive force against them; that being required to use NMCD's grievance system constituted cruel and unusual punishment; and that NMCD implemented its grievance system in a way that discriminated against them based on their disabilities.  The requests above – and, indeed, all of Plaintiffs' requests – would, if answered, reveal some information which might help Plaintiffs litigate their claims.  But that does not make all the information requested "relevant."  As discussed above, information is "relevant" under Rule 26(b)(1) when it bears on or could reasonably lead to other information which bears on any issue

9

that is or may be in the case. *Oppenheimer Fund, Inc.*, 437 U.S. at 351. One can see how specific deposition testimony by an implicated corrections officer discussing how he approaches the use or force or access to the grievance system could help Plaintiffs here, or how information about how often grievances are granted at NMCD facilities could reveal problems in that system. At the very least, these documents could lead to other such information. It is much harder to see, for example, the discovery value of a five-year-old deposition transcript from a corrections officer in another part of the State from a case unrelated to this one, or why Plaintiffs need the details of a five-year-old disciplinary action against a corrections officer not involved in this case at all. The requests, however, ask Defendants for all of this. The Court will not order indiscriminate production of relevant and irrelevant information just so Plaintiffs can decide, after they have it, what they need.

Within the scope of properly relevant information, the requests are not proportional to the needs of the case. Plaintiffs assert that their theory of the case, particularly as to the grievance-system claims, requires expansive discovery so that they can uncover whether and how the Defendants have rigged the system so that nearly every grievance, regardless of merit, is denied. *See* [Doc. 78, pp. 10–13]. But several factors counsel against allowing such a broad-reaching investigation. First, this case is being brought by just two inmates alleging specific instances in which they were harmed by corrections officers and by Defendants' use of the grievance system. Moreover, Plaintiffs' specific request, for "all the grievances filed at RDC and the other NMCD facilities within the NMCD that *survived* the grievance process up to and including the appeals process within the NMCD within the last 10 years", *id.* at 47 (emphasis added), appears the opposite of the information set that would demonstrate that the system is discriminatory, and even less useful without the comparison set of all rejected grievances. The Court can

10

hypothesize that the totality of successful grievances might lack a single instance of success by an intellectually disabled person, but that result would fall short of evidence of discrimination without a comparatively disproportionate number of unsuccessful disabled grievants. But Plaintiffs do not ask for that information. Without a specific showing of likely value to the inquiry, or a significant and principled narrowing of the scope, Plaintiffs' request appears an exercise in futility.

Second, the costs of responding to Plaintiffs' requests would be enormous. Producing every responsive deposition, information about every instance of discipline against corrections officers across the State, and copies of every successful grievance within the entire NMCD would take countless hours. Though Plaintiffs claim that Defendants have this information "at their fingertips," it is more likely that this kind of information is stored across multiple computers and facilities across the State and probably not organized according to criteria which neatly fit with Plaintiffs' claims. Such great costs sometimes can be justified but have not been here.

Third, it is doubtful that Plaintiffs can prevail on their grievance system claims no matter what discovery they obtain. This Court recently held in *Vasquez v. Tafoya-Lucero* that it would be futile to amend a complaint to add Rehabilitation Act and Eighth Amendment claims based on inadequacies in NMCD's grievance system. *See Vasquez v. Tafoya-Lucero*, 1:20-cv-00612-RB-DLM, 2023 WL 2012504 at *3–5 (D.N.M. Feb. 15, 2023). The decision in that case was grounded in Tenth Circuit case law holding, among other things, that there is no independent constitutional right to a state administrative procedure. *See id.* at *5 (citing *Boyd v. Werholtz*, 443 F. A'ppx. 331, 332 (10th Cir. 2011) (unpublished)). Plaintiffs' claims in this case are remarkably similar to those in *Vasquez*. The undersigned Magistrate lacks the power to

11

determine whether Plaintiffs have stated claims based on those theories, but *Vasquez* seems to undercut the weight of Plaintiffs' appeal for broad and extensive sampling of historical grievances.

Given their breadth, Requests for Production 3, 5, 9, 10, 11, 16, 18, 21, 22, and 23 comprise a fishing expedition, seeking large amounts of unfocused information and sweeping more broadly than necessary to litigate Plaintiffs' specific claims, and would thus unreasonably impose an enormous burden on Defendants. The Motion to Compel is denied as to those requests.

      c.  *Request for Production 17: No Compulsion Needed*

Plaintiffs asked Defendants to "produce the current Grievance Policy Manuel [*sic*] used by the NMCD." [Doc. 78, p. 45]. Defendants responded "[t]he grievance policy is the manual used by NMCD." *Id.* Defendants elaborated in their response brief that the manual is available on the NMCD's public website. [Doc. 94, p. 6]. During the motion hearing, counsel on each side confirmed this request was no longer at issue and whatever NMCD manuals Plaintiffs needed would be made available to them. Compulsion is thus unnecessary for this request.

      d.  *Request for Production 20: No Compulsion Needed*

Plaintiffs asked Defendants to "produce for inspection and copying the NMCD Use of Force Policy, i.e., Policy #CD-130600." [Doc. 78, p. 46]. Defendants agreed to produce the policy in their response brief. [Doc. 94, p. 6]. If, for whatever reason, the policy has not been produced to Plaintiffs when this Order issues, the Court will compel its production on a motion by Plaintiffs.

      e.   *Interrogatories 9, 10, 11, 14, 15, 16, 18, 19, 20, and 25: Compulsion Denied*

Defendants will not be compelled to respond to Interrogatories 9, 10, 11, 14, 15, 16, 18, 19, 20, or 25 because the questions are not clearly relevant, nor are they proportional to the needs of the case. To avoid unnecessary repetition, the Court structures its discussion about the interrogatories the same way it did for the overbroad Requests for Production, *i.e.*, by specifically addressing three Interrogatories as representative of the whole.

Plaintiffs posed the following Interrogatories to Defendants:

> Interrogatory No. 11: With respect to medical care provided at RDC and each and every other NMCD facility, without giving the name of or description of the medical condition of the inmate, please detail how many grievances have been filed which allege improper medical care.
>
> Interrogatory No. 14: Please indicate if any audits have been facilitated or completed which involve or detail grievances filed for medical care or abuse by correction officers by inmates in the last 5 years? If so, detail the person or persons in charge of the audit, and the address, phone number, and e[-]mail address of the person(s) who conducted the audits and the custodian of that work product?
>
> Interrogatory No. 18: Please provide the name, address, telephone number, and e[-]mail address of the employee(s) who conducted internal audits or reviews of inmate beatings or inmate complaints regarding lack of proper medical treatment within the NMCD within the last five (5) years.

[Doc. 78, pp. 31, 32, 34–35].

The problems with these interrogatories are the same as the problems with the overbroad Requests for Production. First, they request large amounts of irrelevant information. Recent information about medical grievances at the RDC could, hypothetically, inform Plaintiffs' claims in this case, but it is unclear how knowing the number of such grievances which have been made across all of New Mexico – unbounded by time – will clarify any issues in Plaintiffs' case. Second, the requests are disproportionate to the needs of the case. Contact information for every person who has performed audits on medical care and access to the grievance system over five

years at the NMCD may inform a large-scale investigation into statewide practices within the Corrections Department, but Plaintiffs do not explain how it would further the specific claims they have brought. Accurately answering all of Plaintiffs' Interrogatories would also likely take many hours and accrue high costs for the NMCD and Plaintiffs have not explained why this would be justified. Again, the Court declines to oversee a fishing expedition.

## V.      CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion to Compel Full and Complete Supplemental Answers to Interrogatories and Documents Requested in the First Request for Production of Documents, [Doc. 78].

**IT IS SO ORDERED.**

_____
Hon. Jerry H. Ritter
United States Magistrate Judge