**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GABRIEL J.B. MONTOYA,

     Plaintiff,

v.                                                              No. CIV 22-0265 KG/JHR

ALISHA TAFOYA LUCERO, *et al.*,

     Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendants' Motion for Summary Judgment on Claims of Gabriel Montoya, (Doc. 139), filed December 11, 2024. Plaintiff filed his corrected Response, (Doc. 164), April 20, 2025, and Defendants filed their Reply, (Doc. 165), May 5, 2025. Having considered the briefing, relevant case law, and the procedural history of the case, the Court grants Defendants' Motion.

I.    *Background*

    A.  *Procedural Background*

Three Plaintiffs filed this case in April 2022, all of whom had been inmates at the Reception, Diagnostic and Classification Unit (RDC) at Central New Mexico Correctional Facility (CNMCF) in June and July of 2021. (Doc. 1). The Complaint has been amended twice, and the current operative complaint is the Second Amended Complaint, (Doc. 88). One of the original Plaintiffs, Haydar al-Assadi, was dismissed for lack of prosecution after he lost contact with counsel. (Docs. 43, 86). Recently, the Court dismissed Plaintiff Ares Brown's claims. (Doc. 160). Thus, the only remaining Plaintiff in this case is Gabriel Montoya. The Second Amended Complaint has two enumerated claims against multiple defendants: (1) Violation of Plaintiff's Eighth Amendment Rights; and (2) Violation of Plaintiff's Right to Be Free from

Disability Discrimination in Violation of Section 504 of the Rehabilitation Act of 1973. (Doc. 88) at 42–50. As Magistrate Judge Ritter noted, however, Plaintiff really brings three causes of action, an Eighth Amendment excessive force claim, an Eighth Amendment claim based on prison administrative procedures, and a Rehabilitation Act claim for disability discrimination. (Doc. 100) at 6.

In his Response, Plaintiff abandons all but two claims: (1) a claim for relief under the American with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., via § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 784 against the New Mexico Department of Corrections (NMCD); and (2) an Eighth Amendment excessive use of force claim based on supervisory liability against Time Hatch in his individual capacity. (Doc. 164) at 1. Therefore, all other claims and Defendants named in the Complaint are hereby dismissed with prejudice.

### B. Undisputed Material Facts (UMF)

As an initial matter, the Court addresses Plaintiff's personal declaration submitted in support of his Response. The question is whether and to what extent the Court may rely on Plaintiff's declaration to rebut Defendants Motion for Summary Judgment.

"Affidavits" and "declarations" can be used to oppose summary judgment. Fed. R. Civ. P. 56(c)(1)(A). The declarant must be competent to testify to the matters stated. Fed. R. Civ. P. 56(c)(4). "[T]he nonmovant's [declaration] must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving [declarations] are not sufficient." *Hall v. Belmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). "[I]t is not enough that the evidence be 'merely colorable' or anything short of 'significantly probative.'" *Id.* A declaration "which fails to meet any of the three requirements is subject to a motion to strike" but "the Court may also enforce the rule by disregarding portions of the [declaration] it finds

insufficient." *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp.2d 1163, 1177 (D. Kan.). Plaintiff's declaration contains 79 factual allegations, but the Court need not discuss each allegation. Instead, the Court will disregard portions of the declaration that do not meet the requirements.

The facts in this section are either undisputed or stated in the light most favorable to the nonmovant. To the extent facts have been omitted, the Court deems them immaterial to the Motion or determines they do not meet the declaration requirements discussed above.

On July 28, 2021, Plaintiff Gabriel Montoya transferred from the Bernalillo County Metropolitan Detention Center (MDC) to the RDC located at CNMCF in Los Lunas, New Mexico. (Doc. 139) at 3, ¶ 1; (Doc. 164) at 2, ¶ 1; UMF 1. During intake, nursing staff noted Plaintiff had mental health complaints of PTSD and/or depression and gave him a referral to Mental Health. (Doc. 139) at 3, ¶ 3; (Doc. 164) at 3, ¶ 3; UMF 2. That same day, an RDC Mental Status Examination revealed that, although he had no current suicidal ideation, Plaintiff had attempted suicide four times in 2015, currently heard voices daily, and used Fentanyl the day before arriving at RDC. (Doc. 139) at 3, ¶ 4; (Doc. 164) at 3, ¶ 4; UMF 3. After intake Plaintiff was taken to his cell where, sometime later that same day, Plaintiff yelled for correction officers because he had not received medication. (Doc. 139) at 3, ¶ 5; (Doc. 164) at 3–5; UMF 4. At some point after Plaintiff yelled for help, he placed a plastic bag over his head and stated that he wanted to kill himself. (Doc. 139-4); (Doc. 139-3) at 2–3; UMF 5.

Shift Supervisor Lt. Hope Benavidez, along with other correctional officers, responded and reported to Plaintiff's cell, where Plaintiff reiterated his desire to kill himself. (Doc. 139) at 4, ¶ 7; (Doc. 164) at 7, ¶ 7; UMF 6. Lt. Benavidez instructed the Control Officer to alert Behavioral Health and told Plaintiff to lay on the floor of his cell. (Doc. 139-4); UMF 7. Once

Plaintiff complied, officers entered his cell, pinned his arms and legs, and escorted him out of his cell in a wheelchair. (Doc. 139) at 4, ¶ 10; (Doc. 164) at 7, ¶ 10; UMF 8. Upon reaching the entrance to the Main Clinic, Plaintiff attempted to stand but was taken to the ground by correction officers and sprayed with chemical agents. (Doc. 164-1) at 17–18; UMF 9. According to the Use of Force Review, the corrections officers who deployed the spray thought Plaintiff "jumped out of the wheelchair." (Doc. 164-1) at 17–18; UMF 10. Plaintiff was then escorted into the Main Clinic and decontaminated in the shower. (Doc. 139) at 4, ¶ 12; (Doc. 164) at 7, ¶ 12; UMF 11.

After the incident, Plaintiff informed his roommate he could not read or write, and he needed help filling out a grievance. (Doc. 164) at 8; UMF 12. Later, Plaintiff asked a grievance officer for an accommodation, but the officer responded that he was too busy and would return. (Doc. 164) at 8–9; UMF 13. Despite Plaintiff filling out a complaint, with the help of other inmates, and handing it to a corrections officer, the grievance officer did not log it into the system. (Doc. 164) at 9–10; UMF 14. Plaintiff made multiple attempts to file grievances/complaints with various officials, but none were processed by the facility. (Doc. 164) at 10; UMF 15.

## II.    *Legal Standard*

Summary judgment should be granted if the movant establishes there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020); Fed. R. Civ. P. 56(a). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Id.*

The parties must support factual allegations with evidence and the Court is free to consider materials such as depositions, documents, and affidavits. Fed. R. Civ. P. 56(c)(1)(A). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to put in the record facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–52.

In applying this standard, the Court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). That said, the nonmovant still bears the burden to produce real evidence. The nonmoving party cannot rely upon conclusory allegations, contentions of counsel, speculation, suspicion, or conjecture to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200–01 (10th Cir. 2022). A "plaintiff's version of the facts must find support in the record." *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011) (citation omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *GeoMetWatch Corp.*, 38 F.4th at 1200 (quoting *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019)).

III.    *Analysis*

A. *ADA Claim Against NMCD*

Title II of the ADA prohibits discrimination by public entities on the bases of disability. "This provision extends to discrimination against inmates detained in a county jail." *Robertson*

5

*v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007). Similarly, Section 504 of the Rehabilitation Act prohibits entities that receive federal funding from discriminating against individuals due to their disability. Courts evaluate discrimination claims brought under § 504 and Title II of the ADA together, "[b]ecause these provisions involve the same substantive standards." *Miller ex rel. S.M. v. Bd. Of Educ. Of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009) (citation omitted). To state a ADA and/or § 504 claim, a "plaintiff must allege that: (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson*, 500 F.3d at 1193.

For purposes of this Motion, Defendants assume without admitting Plaintiff is a qualified individual with a disability. (Doc. 165) at 20. The Court, however, is unconvinced that Plaintiff has carried his burden in satisfying this element. Plaintiff states, without providing evidence, that his "mental health and drug issues" qualify as ADA disabilities. (Doc. 164) at 17. Plaintiff's basis for his discrimination claim, however, is that he could not find assistance in filling out grievances because he suffers illiteracy. But Plaintiff fails to establish illiteracy by itself is a disability under the ADA, nor does he allege any other qualified disability. Thus, Plaintiff has failed to satisfy the first element.

As it relates to the second element, Plaintiff argues NMCD discriminated against him solely by reason of his disability when it failed to assist him in filing a grievance because he cannot read or write and was a drug addict. (Doc. 164) at 22–24. But Plaintiff fails to cite caselaw stating the grievance process qualifies as a service, program, or activity. Additionally, to show that NMCD has a pattern of preventing inmates from filing grievances, Plaintiff

provides information about another prisoner with a disability. (Doc. 164) at 19–21. However, establishing such a pattern is not an element to establish a prima facie case under § 504 or the ADA. Thus, the Court finds Plaintiff has provided insufficient evidence to determine Plaintiff was excluded from participating in a service, program, or activity because of his purported disability.

Even if the Court were to find Plaintiff satisfied the second element, he has not satisfied the third element. Plaintiff has failed to make the connection between a qualifying disability and NMCD's unwillingness to assist him in filling out grievances. In other words, Plaintiff has not established NMCD's inaction was based on his disability. Moreover, in Plaintiff's Second Amended Complaint he alleges "NMCD routinely refuses to provide guidance on the grievance process for inmates who are new to the prison experience at RDC, or inmates who have not been in the prison systems for many years." (Doc. 88) at 21, ¶ 19. Thus, NMCD does not discriminate solely against those with disabilities but "refuses" to help all inmates alike.

For the reasons discussed above, the Court grants summary judgment in favor of NMCD on Plaintiff's ADA and § 504 claim.

### B.  Excessive Use of Force – Supervisory Liability Against Tim Hatch

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Walton v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (citation omitted). However, § 1983 "does not authorize liability under a theory of respondeat superior." *Id.* (citation omitted). Thus, in the context of supervisory liability, "[t]he plaintiff…must show an 'affirmative link' between the supervisor and the constitutional violation." *Id.* (citation omitted). This requires "more than a supervisor's mere knowledge of his subordinates conduct." *Id.* (citation omitted). "Rather, a plaintiff must satisfy 'three elements…to establish a successful

§ 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind.'" *Id.* (citation omitted).

As to the first element, direct involvement is not necessary. *Id.* The second element "requires the plaintiff to show that the defendant's alleged action(s) caused the constitutional violation" by setting "in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 768 (10th Cir. 2013) (citation omitted). "The third element 'requires the plaintiff to show that the defendant took the alleged actions with the requisite state of mind'…which 'can be no less than the *mens rea* required' of the subordinates to commit the underlying constitutional violation." *Walton*, 745 F.3d at 435 (citations omitted).

Plaintiff alleges, generally, Warden Tim Hatch's failure to find excessive force in the grievances and failure to discipline corrections officers accused of using excessive force equates to him condoning his subordinates' behavior and allowing it to perpetuate throughout the facility. (Doc. 164) at 12–15. Plaintiff also spends much of his efforts discussing the incident he believes violated his constitutional rights. *Id.* Plaintiff, however, fails to satisfy the requisite elements to establish an "affirmative link" between Tim Hatch and the constitutional violation.

First, Plaintiff focuses extensively on Warden Tim Hatch's generalized failures without providing any specific details. Repeating generalized and vague allegations is insufficient to demonstrate Tim Hatch's personal involvement. *See Vasquez v. N.M. Dep't of Corr.*, 2024 WL 1282766, at *7 (D.N.M.) (explaining the repetition of vague, generalized allegations are insufficient to demonstrate personal involvement). Without more evidence, Plaintiff has failed to satisfy the first element to establish an affirmative link.

Second, assuming, without determining, Plaintiff's constitutional rights were violated, Plaintiff fails to establish a "series of events that defendant knew or reasonably should have known" which led others to deprive Plaintiff of his constitutional rights.  Plaintiff alleges that over a five-year period; inmates have filed grievances against corrections officers alleging excessive force.  (Doc. 164) at 15.  He summarily states that Tim Hatch "let it be known to all the corrections officers involved in the excessive use of force…that he would turn a blind eye to their misconduct and would approve their use of force," without providing evidence of such allegation.  *Id.* at 16.  Plaintiff did not, for example, show Tim Hatch has never determined a use of force was excessive or through the appeals process Hatch's past findings have been overruled. Without more, Plaintiff has failed to establish the causation element.

Finally, Plaintiff fails to satisfy the third element to establish an "affirmative link." Plaintiff argues Tim Hatch's finding that there was no excessive use of force demonstrates that he encouraged and allowed excessive force to "perpetuate with improper motive and with malice."  (Doc. 164) at 16–17.  Plaintiff does not allege Tim Hatch himself perpetuates excessive force with improper motive or malice, nor does Plaintiff provide proper evidence that Tim Hatch determines grievance outcomes with improper motive and malice.  Thus, the Court determines Plaintiff has not shown Tim Hatch acted with the requisite state of mind, i.e. malice, to commit the underlying constitutional violation.

Because the Court determines Plaintiff failed to meet his burden in establishing an "affirmative link" between Tim Hatch and the alleged constitutional violation, the Court will not discuss whether the alleged conduct constitutes excessive use of force.

*IV.*    *Conclusion*

For the reasons discussed above, Defendants' Motion for Summary Judgment, (Doc. 139), is granted.


IT IS SO ORDERED.

/s/ _____

KENNETH J. GONZALES[1]
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.